Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002508
29-MAY-2015
08:56 AM

NO. CAAP-13-0002508

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ERNEST O. PRESAS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-1627)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Reifurth, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged
Defendant-Appellant Ernest O. Presas (Presas) with second-degree
theft, in violation of Hawaii Revised Statutes (HRS) § 708-
831(1)(b) (2014),[1] for stealing merchandise exceeding $300 in

---

[1] HRS § 708-831(1)(b) provides:

> A person commits the offense of theft in the second degree
> if the person commits theft:
>
> . . .
>
> (b)  Of property or services the value of which exceeds
>      $300[.]

HRS § 708-830 (2014) provides in relevant part:

> A person commits theft if the person does any of the
> following:
>
> . . .
>
> (8) Shoplifting.
>
>       (a)  A person conceals or takes possession of the
>            goods or merchandise of any store or retail
>            establishment, with intent to defraud.

value from Pandora Jewelry. After a jury trial, Presas was found guilty as charged. The Circuit Court of the First Circuit (Circuit Court)[2/] sentenced Presas to five years of incarceration and entered its Judgment on July 5, 2013.

On appeal, Presas contends that: (1) there was insufficient evidence to support his conviction; (2) the Circuit Court abused its discretion in precluding Presas from calling Officer Dustin Lui (Officer Lui) as a witness; (3) the Circuit Court erred in failing to *sua sponte* correct the alleged modification of its jury instruction by the Deputy Prosecuting Attorney (DPA) during her closing argument; (4) the DPA committed prosecutorial misconduct during her closing argument; and (5) the Circuit Court committed plain error in failing to instruct the jury on fourth-degree theft as a lesser included offense. We affirm.

BACKGROUND

The charge against Presas stemmed from his alleged theft of a gold bracelet, with a retail value of $1,415, from Pandora Jewelry. On August 16, 2012, Shelby Patton (Patton), a sales person for Pandora Jewelry in Ala Moana Center, assisted Presas after he entered the store. Presas asked about gold bracelets that could be worn around the ankle. Pandora Jewelry kept gold bracelets in a green box under the counter. Each bracelet was individually packaged in a small ziplock bag. Patton retrieved the green box and showed Presas three different bracelets at the counter.

Presas then asked Patton for a business card. Patton left Presas at the counter with the green box containing the gold bracelets open, and she went to the back of the store to get a business card. A surveillance video introduced at trial shows that while Patton was gone, Presas reached his right hand into the green box, took his hand out, placed it on the counter, and then appears to put his hand in his pants pocket.

_____

[2/] The Honorable Karen S.S. Ahn presided.

2

When Patton returned to the counter, she gave Presas a business card with her name on it. Presas asked what time the store closed, then left the store without leaving his name or phone number. Patton repackaged the three bracelets she had shown to Presas and placed them back into the green box, which she put back under the counter.

Later that day, Presas entered another jewelry store, Jewel Flair located in Ward Center. Jewel Flair and Pandora Jewelry had the same owner, and the sales staff work at both stores. At Jewel Flair, Presas spoke to Terri Miyamoto (Miyamoto) and asked if they "sold the gold Pandora." Miyamoto responded that Jewel Flair did not sell that item, but that "we sell it at our Ala Moana store." Presas said that the Ala Moana store did not have the size he wanted, a 7.5 inch gold bracelet, in stock. Miyamoto thought Presas's statement was strange because the 7.5 inch bracelet was a common size that the Ala Moana store carried. She asked Presas for his name and number so she could check for him and call him back. Presas declined to leave his name and number and said he had left his information with Patton at the Ala Moana store.

Miyamoto felt that Presas's behavior was "kind of strange[.]" Presas would not come fully into the store and appeared reluctant to talk to her face to face. After Presas left Jewel Flair, Miyamoto called Pandora Jewelry and asked whether there was any note indicating that a customer interested in a 7.5 inch gold bracelet had left his name and number. No such note was found. Miyamoto was also informed that Pandora Jewelry had the 7.5 inch gold bracelet in stock.[3]

Miyamoto asked Cheryl Horikawa (Horikawa), who was working at Pandora Jewelry, to do an inventory count of the gold bracelets. Horikawa counted the gold bracelets in the green box. There were fifteen gold bracelets in the box, which was one

_____

[3] Patton testified that she did not show Presas a 7.5 inch gold bracelet.

bracelet short of the sixteen bracelets that should have been there based on the count earlier that morning. After speaking to Horikawa, Miyamoto texted her boss, Valerie Yamashita (Yamashita), to inform Yamashita that "something funny happened at Pandora."

Yamashita, the owner of Pandora Jewelry, reviewed the surveillance video recording from Pandora Jewelry and isolated the portion of the video involving Presas's interaction with Patton. Yamashita testified that based on an inventory check of Pandora Jewelry's gold bracelets, a 6.7 inch gold bracelet was missing from the green box. The retail price of the missing bracelet was $1,415.

DISCUSSION

We resolve the issues Presas raises on appeal as follows.

I.

Presas contends that there was insufficient evidence to support his conviction because there was no substantial evidence that he had concealed or taken possession of the missing bracelet. We disagree.

The surveillance video shows that while Patton was gone, Presas reached his hand into the green box and a short time later appeared to put that hand into his pants pocket. The State also presented evidence that an inventory of the green box showed that a gold bracelet was missing and that Presas had made false statements to Miyamoto at Jewel Flair. When viewed in the light most favorable to the State, see State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998), we conclude that there was substantial evidence that Presas stole the missing bracelet by concealing or taking possession of it.

II.

Presas's contention that the Circuit Court abused its discretion in precluding him from calling Officer Lui is without merit. Miyamoto and Horikawa, who both testified at trial, had provided written and oral statements to Officer Lui. Officer

4

Lui's police report included his write-up of the verbal statements made by Miyamoto and Horikawa. Presas proffered to the Circuit Court that he wanted to call Officer Lui to impeach Miyamoto's and Horikawa's trial testimony with certain verbal statements they had made to Officer Lui. In particular, Presas wanted to elicit testimony from Officer Lui, based on Officer Lui's police report, that: (1) Miyamoto told him that she would not be able to positively identify the Caucasian male she had encountered at Jewel Flair but remembers he had an accent; and (2) Horikawa told him that her review of the purchases on August 16, 2012, did not show the purchase of a 7.5-inch Pandora bracelet, and that she was unable to find receipts for any bracelets that day.

The record indicates that despite Miyamoto's statement to Officer Lui about her inability make a positive identification, she later was able to pick Presas out of a six-person photospread. She also identified him in court. In his testimony, Presas acknowledged that he had gone to a jewelry store at Ward Center, which he referred to as "Jewelry Flair," and spoke to a "young lady."

Presas argues that he should have been allowed to call Officer Lui to testify about Miyamoto's statement, not to challenge Miyamoto's identification of Presas, but to generally show she was not credible. However, during Miyamoto's testimony, Presas did not confront Miyamoto with the statement she had made to Officer Lui regarding identification.

The proffered testimony of Officer Lui regarding Miyamoto's statement was hearsay that was inadmissible absent an exception to the hearsay rule. See Hawaii Rules of Evidence (HRE) Rules 801 (Supp. 2014) and 802 (1993). There is a hearsay exception for inconsistent statements. See HRE Rule 802.1(1) (1993). However to qualify for that exception, the statement must be offered in compliance with HRE Rule 613(b) (1993), which provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or

cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement." Presas did not comply with HRE Rule 613(b) because he did not confront Miyamoto with her statement to Officer Lui. Miyamoto's statement to Officer Lui was not admissible under HRE Rule 802.1(1), and Presas does not contend that any other hearsay exception applies. Thus, the Circuit Court did not abuse its discretion in precluding Presas from calling Officer Lui to testify about Miyamoto's statement.

With respect to Horikawa's statements to Officer Lui, Presas contends that because the missing bracelet was 6.7 inches long, Horikawa's statement that she was looking for a receipt for a 7.5-inch bracelet was admissible to impeach her credibility. Presas also contends that because Horikawa testified at trial that a bracelet had been sold that day by an employee named Kelley, her statement to Officer Lui that she was unable to find receipts for any bracelets that day and her failure to mention the sale to Officer Lui were admissible to impeach her credibility.[4]

Presas did not confront Horikawa with her statements to Officer Lui. The proffered testimony of Officer Lui about Horikawa's statements was therefore not admissible under HRE Rule 802.1(1). Officer Lui's testimony about Horikawa's statements was hearsay and Presas fails to show the applicability of any exception to the hearsay rule. Therefore, the Circuit Court did not abuse its discretion in precluding Presas from calling Officer Lui to testify about Horikawa's statements.

III.

Presas argues that the Circuit Court erred in failing to *sua sponte* correct the alleged modification of its jury instruction by the DPA during her closing argument. We disagree.

_____

[4] The State cites to evidence that the bracelet that was sold was on display, and not in the green box, and therefore had not been included in Horikawa's inventory count.

Regarding the elements of second-degree theft that the State was required to prove, the Circuit Court instructed the jury as to the fourth element as follows:

> 4. That the Defendant, either (a) intended to use deception to injure Pandora Jewelry's interest, which had value, in which case the required state of mind as to each of the foregoing elements is "intentionally," or (b) knew that he was facilitating an injury to Pandora Jewelry's interest, which had value, in which case the required state of mind as to each of the foregoing elements is "knowingly."

(Emphasis added.)

In her closing argument, the DPA asked the jury to turn to the Circuit Court's written jury instructions: "Okay. If everybody could turn to page 18. We're looking at number 4. And this has to do with intent to defraud. So the elements that the State needs to prove are on page 18, and the definitions that go with these elements are on page 21." The DPA went on to explain the 4.(b) portion of the elements instruction as follows:

> And the -- I will -- the State will explain "B" because it's easier to explain and it's easier to understand. So with regards to "B," knew that he was facilitating an injury to Pandora's interest which had value. Defendant knew his actions would result in a loss to Pandora, in not legal English. That's a better way to help understand what exactly that means. So he knew his actions would result in a loss to Pandora.

(Emphasis added.)

We reject Presas's contention that the DPA impermissibly modified the Circuit Court's jury instruction by arguing that the requirement that Presas "knew that he was facilitating an injury to Pandora Jewelry's interest, which had value," meant that the State was required to prove that Presas "knew his actions would result in a loss to Pandora." We conclude that there is no material substantive difference between the Circuit Court's instruction and the DPA's explanation of that instruction. Presas also fails to provide any persuasive argument on how the DPA's explanation of the Circuit Court's instruction resulted in prejudice to him. Accordingly, we

7

conclude that the Circuit Court did not plainly err in declining to *sua sponte* preclude or strike the DPA's explanation.

IV.

A.

Presas contends that the DPA committed prosecutorial misconduct in closing argument by expressing her personal opinion regarding the credibility of the witnesses. We disagree.

1.

Presas argues that the DPA engaged in misconduct by accusing Presas of lying. In closing argument the DPA stated:

> Defendant is a man with a plan. <u>He's a good storyteller</u>. He's got his whole cover story planned out to the details. He knew what he was doing. It was all part of his plan to take advantage of a new salesclerk and it worked.
>
> He went into Pandora that day and he took advantage of Shelby. He fooled Shelby. He stole a gold Pandora bracelet and concealed it in his pocket, but he couldn't fool Terri. She was onto him and the defendant knew it. He knew she was onto him that's why he wouldn't come into the store; that's why he wouldn't leave his info; that's why he lied to Terri Miyamoto.
>
> In one statement that he made to Terri Miyamoto, "The Ala Moana store does not have 7.5 gold bracelets," and he left his information at the Pandora Store. <u>There are three lies contained in that one statement</u>. First, that he looked at 7.5 gold bracelets at Pandora. Second, that they were out of gold 7.5 bracelets at Pandora when in fact they had three. And, third, that he left his information at the Pandora Store with Shelby or the Pandora Store.
>
> . . . .
>
> Because the defendant has testified, his credibility, his believability is examined the same way as other witnesses and that's on page 13. You can look at that when you go in the back.
>
> What's the truth here? Defendant lied to Terri Miyamoto that day, <u>and he got on the stand and testified, and he lied about not knowing about Pandora Jewelry</u>. . . . [Y]et under cross-examination he admitted he was familiar with gold Pandora bracelets; that in fact he owned one in July of 2012, just one month before the theft at Pandora. Is what he testified to the really -- the truth?
>
> Look at what he told Terri Miyamoto. Why would he lie to Terri Miyamoto? <u>If he had done nothing wrong, he has no reason to lie. If he has nothing to hide, he has no reason to lie. Use your reason and common sense. Does it sound believable that all of a sudden, when he's testifying, he's</u>

> telling the truth? He's a story teller. He has an answer for everything and it's all part of his plan.
>
> . . . .
>
> [Rebuttal closing]
>
> Defense counsel wants you to believe that someone else could have taken it; that it's the defendant's hand who was in the green box, and it's the defendant who later -- that very same day lies to Terri Miyamoto.
>
> Defense counsel wants you to believe there's nothing suspicious about the defendant and what he did that day, yet in that same day he lied to a salesclerk about something seemingly unimportant. He wants you to believe that lying isn't suspicious.

(Emphasis added.)

Presas contends that the above-emphasized portions of the DPA's closing argument, which argue that Presas had lied, constituted an improper expression of her personal opinion as to Presas's credibility. This contention is without merit. The context of the DPA's statements shows that she was basing her argument that Presas had lied or was a liar on evidence presented at trial. In other words, the DPA's remarks make clear that she was not expressing her personal opinion about Presas's credibility, but arguing that the jury should find that he was not credible based on evidence presented at trial. It is not misconduct for a prosecutor to attack the defendant's credibility, to characterize the defendant as a liar, or to argue that the defendant's exculpatory trial testimony was false and should not be believed. See State v. Clark, 83 Hawaiʻi 289, 304-06, 926 P.2d 194, 209-11 (1996). We conclude that the DPA's argument regarding Presas's credibility was not improper.

2.

Presas contends that the DPA improperly vouched for Patton's credibility in making the following remarks:

> And with regards to witness credibility -- if you turn to pages seven, eight, and nine. And this has to do with the different witnesses you heard from. They're all civilians. They all work at Pandora Store. And it has to do with -- on the bottom of page eight, "resulting from innocent error or deliberate falsehood." Were any of them testifying falsely? Were any of them lying to you purposely? No. You heard from Shelby. She was nervous

9

about testifying.  It's her first time doing that.  <u>She tried to answer the questions as honestly as possible</u>.

With regards to --

THE COURT:  Well, the State submit such.

[DPA]:  The State submits such.

With regards to Valerie Yamashita, in the video, she testified that she gave that camera because it's the only camera that could see anything.  She's not trying to hide things.  Defense makes a -- counsel makes her out to sound -- made her out to sound like she's out to get the defendant.  She just provided the video that showed anything.

(Emphasis added.)

Presas argues that the DPA's statement that "[Patton] tried to answer the questions a honestly as possible" constituted impermissible personal vouching for Patton's credibility.  We disagree.  The DPA linked her remark to the Circuit Court's jury instruction about evaluating witness credibility and Patton's demeanor while testifying.  Patton had testified that she was nineteen years old and was nervous.  We conclude that the DPA's remark, while perhaps inartfully phrased, did not constitute an improper expression of her personal opinion regarding Shelby's credibility.

B.

Presas argues that the DPA engaged in misconduct by attempting to shift the burden of proof to the defense by questioning why the defense had not produced Presas's niece.  Presas had testified that he had gone to Pandora Jewelry to look to buy a gold bracelet for his niece with whom he had a special relationship.  The DPA's comment, which Presas argues was improper, was as follows:

He's a story teller.  He has an answer for everything and it's all part of his plan.

Like this niece, his favorite and only niece that he loves and she loves him.  They have a special relationship so much that he buys her expensive presents like a 14 karat gold bracelet.  This niece that loves him so much, where is she?  She's not in the back of the courtroom here to support .him.

[Defense counsel]:  Objection.

THE COURT:  Sustained.  I'll strike --

[Defense counsel]:  Move to strike.

THE COURT: -- that last argument.  Jury will disregard it.

The record shows that the Circuit Court sustained Presas's objection to the comment about Presas's niece, granted Presas's motion to strike the comment, and instructed the jury to disregard it.  We conclude that any impropriety in the DPA's comment about Presas's niece did not affect Presas's substantial rights.

IV.

Presas contends that the Circuit Court committed plain error in failing to instruct the jury on fourth-degree theft as a lesser included offense.  This contention is without merit.

The State presented undisputed testimony from Yamashita, the owner of Pandora Jewelry, that the missing bracelet had a retail value of $1,415.  Yamashita also testified that the wholesale value of the missing bracelet far exceeded the $300 threshold for second-degree theft.  Presas did not challenge or contest the State's evidence regarding the value of the missing bracelet.  Indeed, Presas's defense was not related to the value of the missing bracelet; Presas's defense was that he did not steal the missing bracelet.  We conclude that there was no rational basis in the evidence for the jury to acquit Presas of the charged second-degree theft but convict him of fourth-degree theft.  See State v. Flores, 131 Hawai'i 43, 53, 314 P.3d 120, 130 (2013).  Therefore, the Circuit Court did not commit plain error in failing to sua sponte instruct the jury on fourth-degree theft.

CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawai'i, May 29, 2015.

On the briefs:

Hayley Y.C. Cheng
for Defendant-Appellant

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Alexa R. Foley
Associate Judge

Lawrence M. Reifurth
Associate Judge

12